Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Katherine Tuohy (SBN 353967)
Katherine@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Kevin T. Lemieux (SBN 225886)
Kevin@LawyerKevin.com
**THE LAW OFFICE OF KEVIN LEMIEUX, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER JOHNSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>WHISKEY SKIES/IN THE IVY, LLC,<br><br>Defendant. | Case No: 3:26-cv-04429-AJB-BJW<br><br><u>FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:</u><br><br>(1) Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq.*;<br><br>(2) California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631(a);<br><br>(3) Invasion of Privacy Under California's Constitution, Article I, Section 1;<br><br>(4) Intrusion Upon Seclusion<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. Plaintiff Jennifer Johnson ("Plaintiff") brings this First Amended Class Action Complaint on behalf of Plaintiff and all others similarly situated (the "Class Members") against Defendant Whiskey Skies/In The Ivy, LLC ("Defendant") for violations of the Electronic Communications Privacy Act (the federal Wiretap Act), 18 U.S.C. § 2511(1), et seq.; the California Invasion of Privacy Act, Cal. Penal Code §§ 631(a)[1] the right to privacy guaranteed by Article I, Section 1 of the California Constitution; and the California common law prohibiting intrusion upon seclusion. This action is based upon personal knowledge of the facts pertaining to Plaintiff, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

2. Plaintiff brings this action against Defendant for intercepting, recording, decoding, capturing, disclosing, and using the contents of Plaintiff's and Class Members' electronic communications with Defendant's Website, as well as their routing, addressing, and signaling information, and for aiding Meta Platforms, Inc. ("Meta") to do the same, by means of a tracking pixel (the "Meta Pixel") and related tracking technologies embedded in Defendant's Website.

3. The Meta Pixel and related technologies did more than capture routing and signaling data. As Plaintiff's own off-Facebook activity confirms, they intercepted the contents of Plaintiff's and Class Members' communications with the Website—including the full URL strings, page paths, search queries, and the specific products and content they viewed—and transmitted those contents to

---

[1] Plaintiff's original Complaint asserted a cause of action for the use of a pen register or trap and trace device in violation of Cal. Penal Code § 638.51. Plaintiff and Class Members abandon that cause of action in light of the enactment of Senate Bill 690 (2025–2026 Reg. Sess.), which was passed by both houses of the California Legislature and signed by the Governor. SB 690 amends Cal. Penal Code § 637.2 to provide that an action for a violation of § 638.51 arising from conduct occurring on an internet website, online application, or mobile application may be brought only by the Attorney General, and applies retroactively to any pending claim in an action commenced within two years before its operative date — thereby foreclosing the claim previously alleged here. Plaintiff reserves all rights with respect to that cause of action.

Meta and other third parties contemporaneously with, and as a duplicate of, the users' communications with Defendant. This interception, disclosure, and use of communication contents, without the consent of Plaintiff and Class Members, violates the federal Wiretap Act, 18 U.S.C. § 2511(1), and CIPA, Cal. Penal Code § 631(a).

4. Defendant's covert interception of these communications and the personal information of Plaintiff and Class Members, the linking of that information to their real-world identities and Facebook accounts through persistent identifiers, and the disclosure and exploitation of that information for Defendant's and Meta's commercial benefit, also invaded Plaintiff's and Class Members' privacy in violation of Article I, Section 1 of the California Constitution and the California common law prohibiting intrusion upon seclusion.

## PARTIES

5. Plaintiff is a natural person and an adult citizen of the state of California, domiciled in San Diego County, California.

6. Defendant is a limited liability company formed in Nevada with its principal place of business in Nevada. Defendant owns, operates, and controls the Website that is the subject of this litigation, including the third-party tracking code embedded in the Website's source code.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 2511(1), et seq. and 28 U.S.C. § 1367 for supplemental state claims.

8. This Court additionally and independently has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where (1) the aggregate claims of all members of the proposed Class are in excess of $5,000,000 exclusive of interest and costs, and (2) at least one Class member is a citizen of a state different from Defendant.

9. This Court has personal jurisdiction over Defendant because Defendant purposefully directed the conduct giving rise to Plaintiff's claims at California: Defendant gathers, takes, uses, monetizes, and shares the information of Californians, including Plaintiff and Class Members, extracted from their devices while those devices are located in California. The events and conduct giving rise to Plaintiff's claims occurred in California, within this judicial district, and the resulting privacy injuries were suffered by Plaintiff and Class Members in California, as Defendant knew they would be.

10. Defendant's suit-related contacts with California are its own intentional acts. Defendant embedded the Meta Pixel and related tracking code in the Website knowing that the code executes on each visitor's own browser, on the visitor's own device, wherever that visitor is located — including in California — and that it would extract data from those devices and transmit it to Meta and other third parties. When Plaintiff and Class Members accessed the Website from California, Defendant's tracking code ran on their devices in California and captured their communications in California. Defendant thereby reached into California and extracted the data of California residents from devices located in this State.

11. Defendant knew that the visitors from whom it extracted data included California residents located in California. Among the very data the Meta Pixel and Defendant's related tracking technologies capture are visitors' IP addresses and associated geolocation information, which identify each visitor's location—including that the visitor is in California—at the moment of interception. Defendant nonetheless deployed and maintained its tracking technologies against California visitors and profited from the data extracted from them.

12. The conduct that gives rise to Plaintiff's claims is Defendant's interception, extraction, and disclosure of data from Californians' devices located in California, not any sale of Defendant's products. Defendant's relevant contacts are entirely its own: Defendant chose to publish the Website to California, chose

to embed tracking code that would execute on California visitors' devices, and chose to take, transmit, and exploit the data that code harvested from those devices. Plaintiff's claims arise directly out of, and relate to, those forum contacts.

13. Defendant's conduct was not the passive maintenance of a nationally accessible website. Defendant did not exclude California visitors from its data collection, did not disable its tracking technologies for visitors located in California, and did not restrict access to the Website from California. On information and belief, Defendant transmitted the data it extracted from California visitors to Meta and other third parties for the purpose of measuring, optimizing, and targeting advertising, including advertising delivered to California residents, and for building and enriching advertising audiences from the visitors whose data it captured. Defendant derived commercial benefit from California residents' data.

14. To the extent Defendant disputes any of the foregoing jurisdictional facts, those facts are within Defendant's exclusive possession and control, and Plaintiff is entitled to jurisdictional discovery concerning Defendant's collection, retention, transmission, and monetization of data extracted from California residents, and concerning Defendant's advertising directed to California residents.

15. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) a substantial part of the events giving rise to Plaintiff's claims, including the interception of Plaintiff's communications, occurred within this judicial district; and (ii) Defendant is subject to personal jurisdiction in this judicial district.

## COMMON FACTUAL ALLEGATIONS

### A. Defendant's Website

16. Defendant owns and operates the website https://www.whiskeyskies.com (the "Website"), through which consumers in California and elsewhere browse and access the website for personal use. The Website is accessible to, and is in fact used by, consumers located in California, and at all times relevant to this action

Defendant published the Website to California visitors and did not geographically restrict access to it.

17. Although the Website presents itself as a retailer of clothing, Defendant also deals in data, which has become an increasingly valuable commodity. To collect that data, Defendant deployed tracking technologies on the Website, including a tracking pixel made available by Meta Platforms, Inc. ("Meta") (the "Meta Pixel").

18. These tracking technologies are embedded in the source code of the Website and are designed to capture, record, and transmit information associated with each visitor's communications with the Website at the moment of interaction. They track visitors and their interactions—including the pages they visit, the links they click, the products they search for and view, their location, and various identifying information—and they aid third parties such as Meta to do the same.

**B. Plaintiff's Use of the Website**

19. Plaintiff visited and interacted with the Website, including by browsing, searching for, and viewing products, and thereby exchanged communications with Defendant through the Website, on or about July 14, 2025. Plaintiff visited the Website while physically located in San Diego County, California.

20. Plaintiff visited the Website for her own personal purposes, namely to research and evaluate Defendant's products.

21. Plaintiff visited the Website of her own volition and as a genuine consumer. At the time of her visits, Plaintiff did not know that Defendant had embedded the Meta Pixel or any other tracking technology in the Website, did not expect that the contents of her communications with the Website would be intercepted or disclosed to anyone, and did not visit the Website for the purpose of experiencing, testing for, or documenting a privacy violation. Plaintiff learned that her communications had been intercepted and transmitted to Meta only in or about

March 2026, when she reviewed the off-Facebook activity records downloaded from Meta related to her claims herein.

22. The full URL strings of the pages Plaintiff requested included, but are not limited to, https://www.whiskeyskies.com/. Defendant installed a Meta Pixel bearing ID ending in 151037 on the Website, configured with active PAGE_VIEW events. Those URL strings and page paths themselves disclosed the substance of what Plaintiff was requesting, reading, and viewing.

23. The information described above is not information that Plaintiff's device transmitted automatically and unavoidably as a technical necessity of connecting to a web server. It is information reflecting Plaintiff's own deliberate choices about what to read, what to search for, and what to disclose about her preferences and personal circumstances, and it was generated by Plaintiff's affirmative interactions with the Website.

**C. Plaintiff Was Identified Through These Communications with the Website**

24. Plaintiff was in fact identified. Plaintiff maintains a Facebook account. As a result, the contents of Plaintiff's communications with the Website were linked to Plaintiff by name through her Facebook account. Plaintiff's off-Facebook activity records her interactions with the Website under her own Facebook identity, whereby Plaintiff could be targeted for specific advertising.

25. Plaintiff was therefore not an anonymous visitor whose general page views were counted in the aggregate. Plaintiff was de-anonymized. Defendant's deployment of the Meta Pixel caused Plaintiff's identity to be joined to a record of the subject matter she had been researching, and that joined record was delivered to a third party for that third party's own commercial exploitation.

26. Plaintiff downloaded Plaintiff's "off-Facebook activity" ("OFBA") from Facebook on or about July 22, 2025. The OFBA reveals that Defendant transmitted to Meta the details of Plaintiff's interactions with the Website, attributed to Plaintiff's own Facebook account: Meta's records reflect at least two

PAGE_VIEW events received from the Website. The OFBA is not a description of what the Meta Pixel is hypothetically capable of collecting; it is Meta's own record of event data Meta actually received from Defendant's Website concerning Plaintiff specifically, linked to Plaintiff's identity.

27. A forensic review, including analysis of HTTP Archive ("HAR") data from the Website, confirms that in a single session the Website caused numerous requests to be transmitted from the visitor's browser, disseminating the contents of communications and routing, addressing, and signaling information within seconds not only to Meta but also to other third parties Defendant embedded in the Website.

**D. The Communications and the Contents**

28. Each time Plaintiff and Class Members navigated, searched, browsed, and interacted with the Website, they transmitted electronic communications to, and exchanged electronic communications with, Defendant's servers. These communications were transfers of signs, signals, writing, images, data, and intelligence transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce.

29. These communications contained their contents, that is, information concerning the substance, purport, and meaning of the communications, including the specific products and pages they requested and viewed, the contents of those requests, and the responses they received.

30. By means of the Meta Pixel and related tracking code embedded in the Website, Defendant intercepted the contents of these communications, and not merely record information. The intercepted contents included the full Uniform Resource Locator ("URL") strings and page paths of the pages Plaintiff and Class Members requested, and the specific products and content they viewed.

31. These URL strings, page paths, and event data reveal the substance, purport, and meaning of what Plaintiff and Class Members communicated to the Website—

what they were interested in, and what they viewed and did—and are therefore contents, not mere addressing or routing information that identifies only a general webpage address or basic subscriber data.

32. The interception occurred while the communications were in transit. The Meta Pixel's code executed within Plaintiff's and Class Members' browsers and transmitted the contents of their communications to Meta and other third parties at the moment of, or simultaneously with, the user's interaction with the Website, and before or contemporaneously with the communications being received by Defendant.

33. The Meta Pixel, the associated tracking code and cookies (including the "_fbp" cookie), Plaintiff's and Class Members' browsers and computing devices, and Defendant's and Meta's web servers each functioned as a device used to intercept the contents of an electronic communication.

34. Meta is a third party to the communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other. Meta is a separate legal entity that offers software-as-a-service and is not a mere passive recording device; Meta has the independent capability and intent to use the intercepted contents for its own commercial purposes, including building user profiles and serving targeted advertising.

35. This interception occurred in California, where Plaintiff and Class Members were located when they communicated with the Website.

### E. Defendant Acted Knowingly and Intentionally

36. Defendant's interception was intentional and knowing. The Meta Pixel does not appear on a website by accident. Defendant made the conscious decision to install the Meta Pixel by obtaining the pixel code from Meta and adding that code to the source code of the Website, and did so for the purpose of capturing, transmitting, and exploiting the contents of its users' communications.

37. Defendant knew, from Meta's own publicly available documentation, exactly what the Meta Pixel would do. According to Meta, the Meta Pixel allows Meta to match a website's visitors to their respective Facebook accounts and to tally their actions for advertising and optimization purposes. Defendant adopted the Meta Pixel because of that capability, not in ignorance of it.

38. Defendant did not disclose to Plaintiff or Class Members, in any manner reasonably calculated to reach them before or during their use of the Website, that the contents of their communications would be intercepted and transmitted to Meta and other third parties, or that their identities would be joined to those contents.

39. Defendant carried out this interception for the purpose of committing independent criminal and tortious acts — including invasion of privacy, intrusion upon seclusion, and violations of the California Invasion of Privacy Act — by surreptitiously surveilling Plaintiff's and Class Members' communications, aggregating their contents with persistent identifiers tying the data to their real-world identities and Facebook accounts, and disclosing and exploiting that information for Defendant's and Meta's commercial benefit. That Defendant also acted for commercial gain does not change this purpose, because committing a tort and seeking a profit are not mutually exclusive.

### F. Defendant Did Not Obtain Consent

40. Neither Plaintiff nor Class Members consented, expressly or impliedly, to the interception, recording, disclosure, or use of the contents of their communications with the Website, or to the transmission of those contents to Meta or any other third party.

41. To the extent Defendant contends that a cookie notice or banner displayed on the Website supplied that consent, it did not. Any such notice appears, if at all, only after the Website has begun to load and after the Meta Pixel and related tracking code have already executed and transmitted the contents of the visitor's

communications to Meta and other third parties. The interception is complete before the visitor can read the notice, let alone respond to it, and a visitor who declines or ignores the notice has already been surveilled.

42. Any such notice is also inadequate in substance. It states, in effect, only that a visitor's continued use of the Website constitutes consent to Defendant's use of "cookies." It does not disclose that the contents of a visitor's communications with the Website — including the pages and products the visitor requests and views — are simultaneously routed to third parties; it does not identify Meta or any other recipient; it does not disclose that the visitor's activity is joined to the visitor's real-world identity and Facebook account through persistent identifiers; and it does not seek consent to the interception of the contents of communications in transit.

43. Consent to the placement of cookies is not consent to the interception, disclosure, and use of the contents of communications. A visitor who is told only that a website "uses cookies" is not told, and would not understand, that a third-party advertising company is simultaneously receiving an identified copy of his communications with that website.

44. Nor did Defendant obtain consent through any privacy policy. Any such policy was presented, if at all, as a hyperlink that visitors were not required to view or affirmatively accept before the interceptions occurred, and its terms were not reasonably conspicuous. Plaintiff did not read, was not required to read, and did not agree to any such policy before or during her visits to the Website.

45. California Penal Code § 631(a) requires the consent of all parties to a communication. Neither Defendant nor Meta obtained the consent of Plaintiff or Class Members to Meta's receipt, reading, learning, or use of the contents of their communications with the Website.

**G. Plaintiff's Privacy Interests and Injury**

46. Plaintiff and Class Members possess a legally protected privacy interest in the contents of their communications with the Website and in their personal information, including the search queries they entered, the specific products and content they viewed, their browsing and purchasing activity, and the persistent identifiers that link that activity to their identities.

47. Plaintiff and Class Members had a reasonable expectation of privacy in this information under the circumstances. A consumer who visits a website does not expect that a record of that visit, including the searches, inputs, clicks, and purchases made on that visit, will be joined to their real name and delivered to an advertising company. That expectation is reinforced by the regulatory and social norms governing the handling of consumer information.

48. Plaintiff does not rest on a bare statutory violation. The injury Plaintiff alleges is the interception of the contents of her private communications and their disclosure to a third party in a form that identifies her by name. That disclosure is the harm itself, not a risk of some future harm, and it was complete at the moment the contents were transmitted to Meta.

49. Plaintiff's injury is particular to her and is not one she shares merely in common with the public at large. The communications intercepted were Plaintiff's own; the pages requested were the pages Plaintiff requested; and Meta's records of the interceptions are attributed to Plaintiff's own Facebook account and reflect Plaintiff's own conduct on the Website on a specific date and at a specific time.

50. The contents of Plaintiff's communications and her personal information have economic value. That is why Defendant collected them, why Defendant transmitted them to Meta, and why Meta and other third parties accept and pay for them. Defendant appropriated that value for itself and for Meta without compensating Plaintiff and without her knowledge, and Plaintiff was thereby deprived of the value of, and of the ability to control, her own information.

51. Defendant's covert collection of this information, the linking of it to Plaintiff's and Class Members' real-world identities and Facebook accounts, and the disclosure and exploitation of it for Defendant's and Meta's commercial benefit, constitute a serious invasion of privacy that is highly offensive to a reasonable person, given the breadth and sensitivity of the information and the secret manner of its collection.

52. Plaintiff and Class Members had an objectively reasonable expectation that their communications and activity on the Website would remain private and would not be surreptitiously intercepted by, and disclosed to, a third party such as Meta.

53. Defendant intentionally intruded upon that seclusion by deploying the Meta Pixel and related technologies to surveil, capture, and transmit the contents of Plaintiff's and Class Members' communications to Meta and other third parties, without notice to or consent from Plaintiff and Class Members.

54. Defendant's intrusion was highly offensive to a reasonable person, given the breadth and sensitivity of the information intercepted, the secrecy of the collection, the linking of that information to Plaintiff's and Class Members' real-world identities through persistent identifiers, and the exploitation of that information for commercial benefit.

55. As a direct and proximate result of Defendant's conduct, Plaintiff suffered concrete injury. Plaintiff lost the right to control the dissemination and use of the contents of her own communications and of information about her preferences and personal circumstances. Plaintiff's research was intercepted, disclosed to third parties, joined to her identity, and used to build a commercial profile of her without her knowledge.

56. These injuries bear a close relationship to harms long recognized as actionable at common law, including intrusion upon seclusion, the public disclosure of private facts, and the long-standing common law and statutory prohibitions on eavesdropping upon and wiretapping private communications. The interest

invaded—the interest in not having one's private communications surreptitiously overheard and repeated to a stranger for profit — is among the oldest privacy interests the law protects.

57. The data Defendant is known to have recorded, decoded, and captured, and aided Meta and others to obtain, represents only a portion of the information actually collected, as demonstrated by the limited disclosures available through Meta's OFBA. The full scope of Defendant's conduct is broader and will be the subject of further investigation and discovery.

**H. Plaintiff's Claims Are Timely Under the Discovery Rule**

58. A claim under California Penal Code § 631(a) is subject to the one-year statute of limitations in California Code of Civil Procedure § 340(a).

59. Under California's discovery rule, however, accrual is delayed until the plaintiff discovers, or has reason to discover, the factual basis for the claim. *See Norgart v. Upjohn Co.*, 981 P.2d 79, 83 (Cal. 1999).

60. California courts apply the discovery rule to claims brought under California Penal Code §§ 631 and 637.2, holding that "the statute of limitations on a cause of action under [Penal Code sections] 631 and 637.2 commences when the plaintiff knew or should have known of the defendant's unlawful acts." *Montalti v. Catanzariti*, 236 Cal. Rptr. 231, 232 (Ct. App. 1987).

61. Defendant's interception was entirely surreptitious. The Meta Pixel operated invisibly within the source code of the Website; Defendant provided no banner, pop-up, or other disclosure at the moment of interception; and nothing on the face of the Website revealed that the contents of visitors' communications were being duplicated and transmitted to Meta. Because the interception was invisible and undisclosed, Plaintiff and Class Members had no meaningful notice of it and no reason to suspect that their rights under California Penal Code § 631(a) had been violated.

62. Plaintiff downloaded a copy of her off-Facebook activity from Meta on or about July 22, 2025.

63. Plaintiff reviewed her off-Facebook activity records related to her claims in this case in or about March 2026. Upon that review, Plaintiff discovered the entries reflecting that Defendant's Website had transmitted her communications to Meta on July 14, 2025.

64. The interception occurred inside Plaintiff's browser without any visible indication, and the only record of it available to Plaintiff was Meta's own off-Facebook activity data.

65. Because Plaintiff did not discover, and had no reason to discover, the factual basis for her claim under California Penal Code § 631(a) until in or about March 2026, the limitations period on that claim did not begin to run until that time. Plaintiff filed this action on August 3, 2026, within one year of discovery. Under the discovery rule, Plaintiff's claim under § 631(a) is timely.

66. Plaintiff's remaining claims are timely regardless of the discovery rule. Each is governed by a two-year limitations period, *see* 18 U.S.C. § 2520(e); Cal. Civ. Proc. Code § 335.1, and Plaintiff filed this action within two years of the July 14, 2025 interceptions.

## CLASS ACTION ALLEGATIONS

67. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class defined as:

> "All persons who, while physically located in California, used the Website at any time from August 3, 2024, through the date of judgment, and whose electronic communications or personal information were transmitted to a third party, including Meta, by means of the Meta Pixel or other tracking technology installed on the Website" (the "Class").

68. Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of one or more subclasses.

69. Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; counsel in this action and their employees; and any judge to whom this case is assigned, together with his or her spouse, immediate family members, and staff.

70. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. The exact number of Class Members is presently unknown but is estimated to be many thousands of individuals, the identities of whom are readily ascertainable from Defendant's records reflecting the period during which the Meta Pixel was installed and active on the Website, together with the records of Meta and the other third parties to which Plaintiff's and Class Members' communications and information were transmitted.

71. **Typicality.** Plaintiff's claims are typical of the claims of the Class. Like all Class Members, Plaintiff visited and communicated with the Website, and Defendant intercepted, disclosed, and used the contents of Plaintiff's communications, as well as Plaintiff's routing, addressing, and signaling information, and aided Meta to do the same, by means of the same Meta Pixel and tracking technologies and the same uniform course of conduct. Plaintiff's claims arise from the same conduct and are based on the same legal theories as the claims of the other Class Members under each of the causes of action alleged.

72. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class. Plaintiff has retained counsel experienced in the prosecution of class action litigation generally and in digital privacy litigation specifically, and Plaintiff and

counsel are committed to prosecuting this action vigorously on behalf of the Class.

73. **Commonality and Predominance.** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Class include:

a. Whether Defendant installed and used the Meta Pixel and related tracking technologies on the Website, and aided Meta and other third parties to receive data therefrom;

b. Whether the communications between Class Members and the Website contained "contents" within the meaning of the federal Wiretap Act and the California Invasion of Privacy Act;

c. Whether, by means of the Meta Pixel, Defendant intentionally intercepted, used, or disclosed the contents of Class Members' electronic communications while in transit, and procured Meta and other third parties to do so, in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) (Count I);

d. Whether Defendant intercepted those communications for the purpose of committing a criminal or tortious act, such that the party exception of 18 U.S.C. § 2511(2)(d) does not apply (Count I);

e. Whether Defendant, by means of the Meta Pixel, read, learned, attempted to read or learn, or aided Meta to read or learn, the contents of Class Members' communications while in transit and without the consent of all parties, and used the information so obtained, in violation of CIPA, Cal. Penal Code § 631(a) (Count II);

f. Whether Defendant's conduct violated Class Members' right to privacy under Article I, Section 1 of the California Constitution (Count III);

g. Whether Defendant intentionally intruded upon Class Members' seclusion in a manner highly offensive to a reasonable person under California common law (Count IV);

h. Whether Class Members had a reasonable expectation of privacy in the contents of their communications and in their personal information;

i. Whether Defendant obtained the consent of Class Members to the conduct alleged; and

j. Whether Plaintiff and Class Members are entitled to statutory damages, punitive damages, restitution, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

74. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment permits a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. Because the recovery available to any individual Class Member is small relative to the burden and expense of individual litigation, it would be impracticable for Class Members to seek redress individually, and the class mechanism provides the only realistic means of redress.

75. **Ascertainability and Manageability.** The Class is readily ascertainable through objective criteria, using Defendant's records reflecting when the Meta Pixel was installed and active on the Website and the records of Meta and other third parties identifying the persons whose communications and information were transmitted to them. The uniformity of Defendant's conduct, the consistency of the governing legal standards, and the ascertainability of Class Members demonstrate that this action presents no significant manageability problems.

## CLAIM FOR RELIEF

### Count I – Violation of the Electronic Communications Privacy Act
### 18 U.S.C. § 2511(1), et seq.

76. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

77. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

78. The Electronic Communications Privacy Act, also known as the federal Wiretap Act ("ECPA"), 18 U.S.C. § 2510, et seq., prohibits the intentional interception, use, and disclosure of wire, oral, and electronic communications.

79. Section 2511(1)(a) imposes liability on any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

80. Section 2511(1)(c) imposes liability on any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any … electronic communication, knowing or having reason to know that the information was obtained through the interception of a … electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c).

81. Section 2511(1)(d) imposes liability on any person who "intentionally uses, or endeavors to use, the contents of any … electronic communication, knowing or having reason to know that the information was obtained through the interception of a … electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(d).

82. Section 2520(a) confers a private right of action upon "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter," and authorizes recovery of statutory and actual damages, punitive damages, reasonable attorneys' fees, and equitable and declaratory relief. 18 U.S.C. § 2520.

83. The communications at issue are "electronic communications" within the meaning of 18 U.S.C. § 2510(12), in that they constitute transfers of signs, signals, writing, images, data, and intelligence transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce.

84. When Plaintiff and Class Members navigated, searched, browsed, and interacted with the Website, they transmitted electronic communications to and exchanged electronic communications with Defendant's servers, including the specific products and pages they requested and viewed, the contents of those requests, and the resulting responses.

85. The ECPA protects the "contents" of an electronic communication, which "includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

86. Defendant, by means of the Meta Pixel and other tracking technologies embedded in the source code of its Website, intercepted the contents of Plaintiff's and Class Members' electronic communications, and not merely record information. The intercepted contents included the full URL strings and page paths of the pages Plaintiff and Class Members requested and the specific products and pages they viewed.

87. These URL strings and event data are "contents" because they reveal the substance, purport, and meaning of what Plaintiff and Class Members communicated to the Website—namely, what they were interested in, and what they viewed and did—rather than mere addressing or routing information that identifies only a general webpage address or basic subscriber information.

88. When Plaintiff and Class Members visited the Website, the Meta Pixel installed a "_fbp" cookie on their computers, creating a unique browser identifier for each visitor. When those visitors logged into Facebook from the same browser, Meta paired the "_fbp" cookie with each visitor's Facebook account using the "c_user"

cookie that Meta had placed on their computers, and Defendant transmitted to Meta an "external_id" advanced-matching parameter, enabling Defendant and Meta to identify the visitor in the real world.

89. Plaintiff's own "off-Facebook activity" ("OFBA") data, downloaded from Facebook, confirms that Defendant transmitted to Meta the contents of Plaintiff's communications with the Website, including identifiers tied to Plaintiff, timestamps, and descriptions of specific interactions, attributed to Plaintiff's own Facebook account.

90. Defendant intentionally intercepted, endeavored to intercept, and procured Meta and other third parties to intercept the contents of these electronic communications. The Meta Pixel and associated tracking code caused Plaintiff's and Class Members' browsers to transmit the contents of their communications with the Website to Meta and other third parties contemporaneously with, and as a duplicate of, the communications directed to Defendant.

91. The interception occurred while the communications were in transit, as alleged above.

92. The Meta Pixel, the associated tracking code and cookies (including the "_fbp" cookie), Plaintiff's and Class Members' browsers and computing devices, and Defendant's and Meta's web servers each constitute a "device" within the meaning of 18 U.S.C. § 2510(5) that was used to intercept the contents of an electronic communication.

93. Defendant's interceptions were intentional, as alleged above, including Defendant's deliberate installation of the pixel code and its configuration of specific event triggers.

94. Defendant intentionally disclosed, and endeavored to disclose, the contents of Plaintiff's and Class Members' electronic communications to Meta and other third parties, knowing or having reason to know that those contents were obtained through the interception of electronic communications, in violation of 18 U.S.C.

§ 2511(1)(c).

95. Defendant intentionally used, and endeavored to use, the contents of Plaintiff's and Class Members' electronic communications, knowing or having reason to know that those contents were obtained through the interception of electronic communications, in violation of 18 U.S.C. § 2511(1)(d).

96. Neither Plaintiff nor Class Members consented to Defendant's interception, disclosure, or use of the contents of their electronic communications, or to the transmission of those contents to Meta and other third parties, as alleged above.

97. To the extent Defendant contends it was a party to the communications under 18 U.S.C. § 2511(2)(d), the party exception does not apply. Defendant intercepted, disclosed, and used the contents of Plaintiff's and Class Members' communications for the purpose of committing criminal and tortious acts in violation of the Constitution and laws of the United States and of the State of California.

98. The party exception in 18 U.S.C. § 2511(2)(d) does not permit a party that intercepts, or causes the interception of, a communication to escape liability where the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

99. A determining factor in, and the purpose of, Defendant's interception, disclosure, and use of the contents of Plaintiff's and Class Members' communications was to commit the following independent criminal and tortious acts: (a) violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a); (b) invasion of privacy under Article I, Section 1 of the California Constitution; and (c) intrusion upon seclusion under California common law—each as alleged in the counts that follow and incorporated herein.

100. Independent of the act of interception, Defendant's purpose was to invade the privacy of Plaintiff and Class Members by surreptitiously surveilling their

communications, aggregating the contents of those communications with persistent identifiers tying the data to their real-world identities and Facebook accounts, and disclosing and exploiting that information for Defendant's and Meta's commercial benefit—conduct that would be highly offensive to a reasonable person.

101. The seizure and use of the contents of Plaintiff's and Class Members' electronic communications, combined with unique and persistent identifiers (including the "_fbp" and "c_user" cookies and the "external_id" advanced matching parameter), enabled Defendant and Meta to identify Plaintiff and Class Members and to build detailed profiles of them, intruding upon a zone of privacy in which Plaintiff and Class Members had a reasonable expectation of privacy.

102. That Defendant also acted for commercial gain does not defeat the crime-tort exception, because committing a tort and seeking a profit are not mutually exclusive, and Plaintiff has alleged that Defendant's conduct violated independent state common law and statutory privacy protections.

103. As a direct and proximate result of Defendant's violations of the ECPA, Plaintiff and Class Members have suffered injury, including the violation of their statutorily protected privacy interests, the loss of the right to control the dissemination and use of the contents of their communications, and the loss of the value of their private information.

104. Pursuant to 18 U.S.C. § 2520, Plaintiff and Class Members are entitled to recover from Defendant the greater of actual damages or statutory damages, punitive damages, reasonable attorneys' fees and litigation costs, and such preliminary, equitable, and declaratory relief as may be appropriate to enjoin Defendant's continued violations of the ECPA.

**Count II – Violation of the California Invasion of Privacy Act**

**Cal. Penal Code § 631(a)**

105. Plaintiff incorporates by reference each and every preceding paragraph of this

First Amended Complaint as though fully set forth herein.

106. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

107. California Penal Code § 631(a) imposes liability on any person who, "by means of any machine, instrument, or contrivance, or in any other manner," (i) intentionally taps or makes any unauthorized connection with any telegraph or telephone wire, line, cable, or instrument; (ii) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state"; (iii) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; or (iv) aids, agrees with, employs, or conspires with any person to do any of the foregoing.

108. Section 631(a) is not limited to telephone or telegraph lines and applies to electronic and internet communications.

109. Plaintiff's claim under § 631(a) is not affected by Senate Bill 690 (2025– 2026 Reg. Sess.), which restricted private enforcement of Cal. Penal Code § 638.51 as to conduct occurring on internet websites, online applications, and mobile applications. The Legislature did not restrict the private right of action under Cal. Penal Code § 637.2 for violations of § 631(a).

110. The Meta Pixel and associated tracking code are a "machine, instrument, contrivance, or … other manner" used to engage in the conduct prohibited by Section 631(a).

111. As alleged above, the communications Plaintiff and Class Members exchanged with the Website included the contents of those communications, namely their full URL strings, search queries, and the specific products and content they viewed and acted upon.

112. Meta is a third party to the communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other. Meta is a separate legal entity that offers software-as-a-service and is not a mere passive recording device; Meta has the independent capability and intent to use the intercepted contents for its own commercial purposes, including building user profiles and serving targeted advertising.

113. By means of the Meta Pixel, Defendant willfully and without the consent of all parties to the communication, and in an unauthorized manner, read, attempted to read, and learned the contents or meaning of Plaintiff's and Class Members' communications with the Website while those communications were in transit or being sent from or received within California.

114. By means of the Meta Pixel, Defendant aided, agreed with, employed, or conspired with Meta and other third parties to read, attempt to read, and learn the contents or meaning of Plaintiff's and Class Members' communications with the Website while those communications were in transit, in violation of Section 631(a).

115. Defendant used, and attempted to use, the contents of the communications so obtained for its own purposes, including marketing, advertising optimization, and data aggregation, in violation of Section 631(a).

116. Defendant acted willfully. As alleged above, Defendant deliberately installed the pixel code on its Website and configured the events on which the pixel would fire.

117. Neither Plaintiff nor Class Members consented to Defendant's or Meta's reading, learning, use, or interception of the contents of their communications.

118. The interception occurred in California, where Plaintiff and Class Members were located when they communicated with the Website.

119. Plaintiff's claim under Section 631(a) is timely. As alleged above, Plaintiff did not discover the factual basis for this claim until in or about March 2026, and she filed this action within one year of that discovery.

120. Plaintiff and Class Members have been injured by Defendant's violations of Section 631(a), as alleged above. Cal. Penal Code § 637.2(c) further provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

121. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members each seek statutory damages of $5,000 for each violation, together with injunctive relief to stop the violations alleged herein.

**Count III – Invasion of Privacy**

**California Constitution, Article I, Section 1**

122. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

123. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

124. Article I, Section 1 of the California Constitution provides that all people have an inalienable right to privacy.

125. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that constitutes a serious invasion of that privacy interest.

126. Plaintiff and Class Members possess a legally protected privacy interest in the contents of their electronic communications with the Website and in their personal information, including the specific products and content they viewed, and their browsing and purchasing activity, together with the persistent identifiers that link that activity to their identities.

127. Plaintiff and Class Members had a reasonable expectation of privacy in these

communications and information, as alleged above.

128. Defendant's conduct constitutes a serious invasion of privacy that is highly offensive to a reasonable person, given the breadth and sensitivity of the information collected, the covert manner of collection, the disclosure of that information to Meta and other third parties, and the use of persistent identifiers to compile detailed profiles of Plaintiff and Class Members for commercial gain.

129. Plaintiff and Class Members did not consent to Defendant's invasion of their privacy.

130. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered injury to their privacy interests and are entitled to compensatory and punitive damages and to injunctive and declaratory relief.

**Count IV – Intrusion Upon Seclusion**

**California Common Law**

131. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

132. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

133. To establish a claim for intrusion upon seclusion under California common law, a plaintiff must show (1) the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff had a reasonable expectation of privacy; and (2) the intrusion occurred in a manner highly offensive to a reasonable person.

134. Plaintiff and Class Members had an objectively reasonable expectation of privacy in the contents of their communications with the Website and in their browsing and purchasing activity, including the expectation that such communications would not be surreptitiously intercepted by and disclosed to a third party such as Meta.

135. Defendant intentionally intruded upon that seclusion by deploying the Meta Pixel

and associated tracking technologies to surveil, capture, and transmit the contents of Plaintiff's and Class Members' communications to Meta and other third parties, without notice to or consent from Plaintiff and Class Members.

136. Defendant's intrusion was highly offensive to a reasonable person, given the breadth and sensitivity of the information intercepted, the secrecy of the collection, the linking of that information to Plaintiff's and Class Members' real-world identities through persistent identifiers, and the exploitation of that information for Defendant's and Meta's commercial benefit.

137. Plaintiff and Class Members did not consent to Defendant's intrusion.

138. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered injury to their privacy interests and are entitled to compensatory and punitive damages and to injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks:

a. An order certifying the Class, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;
b. An order declaring that Defendant's conduct violated the statutes and laws referenced herein;
c. An order finding in favor of Plaintiff and the Class on all counts asserted herein;
d. An award of statutory damages;
e. An award of actual and compensatory damages;
f. An award of punitive damages in an amount to be determined at trial;
g. Prejudgment interest on all amounts awarded;
h. Injunctive relief as pleaded or as the Court may deem proper;
i. An award of reasonable attorneys' fees and expenses and costs of suit;

j. Any other relief the Court deems reasonable and just.

**JURY TRIAL DEMANDED**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.

Respectfully submitted,

**SWIGART LAW GROUP, APC**

Date: September 23, 2026

By: _s/ Katherine Tuohy_

Katherine Tuohy
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com

**THE LAW OFFICE OF KEVIN LEMIEUX, APC**

Date: September 23, 2026

By: _s/ Kevin Lemieux_

Kevin Lemieux, Esq.
Kevin@LawyerKevin.com

*Attorneys for Plaintiff and the Putative Class*